# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

TERESA STACY-MCNAUGHTON,  :

          Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
          Defendant.  :

Case No. 3:09-cv-025

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on October 7, 2004, alleging disability from July 5, 2004, due to left leg problems, partial rupture of her Achilles tendon, spur problems, and a learning disability. *See* Tr. 53-55; 74. Plaintiff's applications were denied initially and on reconsideration. *See* Tr. 36-44. A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 450-74), who determined that Plaintiff is not disabled. (Tr. 16-28). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that she met the insured status requirements of the Act through December 31, 2009. (Tr. 19 ¶ 1). Judge Padilla also found that Plaintiff has severe residuals of Achilles tendon repair on the left and depression/dysthymia, but that she does not have an impairment or combination of impairments that meets or equals the Listings. *Id.* ¶ 3 and 4. Judge Padilla found further that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 20 ¶ 5). Judge Padilla then used sections 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 27, ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 28, ¶ 11).

In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged mental impairments. (Doc. 9). Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged exertional impairments

4

Examining physician Dr. Danopulos reported on February 10, 2005, that Plaintiff had painful and restricted motions of her left foot and ankle, her left heel was missing some soft tissue, her left ankle circumference was thirty-one centimeters versus twenty-eight centimeters on the right, and that there was no ankle edema. (Tr. 161-67). Dr. Danopulos also reported that Plaintiff had a difficult and slightly limping gait and that her neurological examination was normal. *Id.* Dr. Danopulos noted that the objective findings were left ankle, rule out arthritis, left foot fasciitis and inflammation, and being treated for depression and hypothyroidism. *Id.* Dr. Danopulos opined that Plaintiff's ability to do any work-related activities like walking, standing, lifting, and carrying were restricted due to severe left foot and ankle pain. *Id.*

During the period June 23, 2004, through January 7, 2008, Plaintiff received treatment from Gary LaBianco, D.P.M., a podiatrist, for pain at the posterior aspect of her left heel secondary to chronic Achilles tendinitis. (Tr. 186-94; 433-36). The record of that treatment reveals that Plaintiff's underwent surgery which her podiatrist performed for treatment of a ruptured Achilles tendon and excision of a bone spur. *Id.* The record also reveals that Plaintiff saw her podiatrist on several occasions in 2004, on one occasion in 2005, not at all in 2006, on one occasion in 2007, and on one occasion in 2008. *Id.*

On November 1, 2004, Plaintiff's podiatrist reported that Plaintiff was not employable in a sitting-type job because she was not trained for any type of sitting work, that she was a good candidate for work rehabilitation/disability to get her into some different type of work. *Id.* Plaintiff's podiatrist reported on June 16, 2005, that Plaintiff was unable to work secondary to pain in her left heel secondary to chronic Achilles tendinitis and that it would be quite difficult for her to work in anything other than a sitting-type position and that she was a very good candidate for

disability. *Id.* On August 24, 2007, Plaintiff's podiatrist reported that Plaintiff was unable to walk/stand more than fifteen minutes, her condition was poor but stable, she was non-weight bearing, was unable to stand or walk for five to ten minutes without burning pain at the posterior aspect of her heel, and that she also had a learning disability that limited her ability to work. *Id.*

The transcript contains a copy of treating physician Dr. Derksen's office notes dated October 20, 2000, through November 19, 2007. (Tr. 299-345; 426-32). Those notes reveal that Dr. Derksen treated Plaintiff for various medical conditions and complaints including Achilles tendinitis, panic attacks, epicondylitis, dysthymia, anxiety, gastritis, probable irritable bowel syndrome, fluid retention, hypothyroidism, closed head injury, syncope, hip sprain, and chest wall contusion. *Id.* On April 6, 2006, Dr. Derksen reported that Plaintiff was able to lift/carry up to five pounds occasionally and no weight frequently, stand/walk for one hour in an eight-hour work day and for one-quarter hour without interruption, her ability to sit was not affected by her impairments, her ability to perform repetitive foot/ankle movements, stand, and walk were affected greatly due to her left ankle problems including swelling, limited range of motion, and chronic pain, and that she was not able to perform light or sedentary work. *Id.*

Dr. Derksen reported on June 4, 2007, that Plaintiff's diagnoses were learning disability, chronic left foot pain, and chronic depression, she was unable to stand on her left foot except for short periods and kept the foot splinted all day, and that originally her foot had a fracture in the spur. (Tr. 383). Dr. Derksen also reported that Plaintiff's left heel and ankle swell when she walks, she had to ice it three times a day, and that she was seeing a psychiatrist regarding her depression. *Id.*

Plaintiff was hospitalized July 12-20, 2007, during which time she was treated for

6

gallstone pancreatitis and underwent a laparoscopic cholecystectomy. (Tr. 399-414). Plaintiff did well postoperatively and was discharged. *Id.*

On August 13, 2007, Dr. Derksen reported that Plaintiff's diagnoses were recent gallstone pancreatitis requiring hospitalization and cholecystectomy, learning disability, and chronic left foot pain (remote trauma). (Tr. 429). Dr. Derksen opined that Plaintiff was currently unable to work. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting treating physician Dr. Derksen's opinion as well as her treating podiatrist's opinion and by failing to find that her allegations of disabling pain were entirely credible. (Doc. 9).

In support of her first Error, Plaintiff essentially argues that the Commissioner erred by failing to accept her treating sources' opinions that she is limited to lifting no more than five pounds.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* at 406, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

7

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra.* On the other hand, a Social Security Ruling[1] explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. The *Wilson* Court explained the two-

---

[1] Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Plaintiff's podiatrist's opinion as to Plaintiff's ability to perform work-related activities, Judge Padilla determined that Plaintiff's podiatrist was not a meaningful treating source other than at the time of Plaintiff's surgery in June, 2004, and follow-up for a few months thereafter. (Tr. 22). In addition, Judge Padilla concluded that the podiatrist's opinion was not supported by clinical findings. *Id.*

As noted above, the record reveals that while Plaintiff did see her podiatrist on several occasions in 2004, subsequently, she saw him infrequently. Specifically, Plaintiff saw her podiatrist on one occasion in 2005, not at all in 2006, on one occasion in 2007, and on one occasion in 2008. Nevertheless, in spite of the infrequent occasions he treated her, Plaintiff's podiatrist

9

opined that Plaintiff was disabled. In addition, Plaintiff's podiatrist based his opinion on factors outside his area of expertise. For example, in November, 2004, Plaintiff's podiatrist reported that Plaintiff was not employable in a sitting-type job because she was not trained for any type of sitting work. In that same report, however, Plaintiff's podiatrist opined that Plaintiff was a good candidate for rehabilitation, an opinion that is inconsistent with his conclusion that Plaintiff was not employable. In addition, in August, 2007, Plaintiff's podiatrist, in part, based his opinion that Plaintiff was disabled on her alleged learning disability. Finally, Plaintiff's podiatrist provided few, if any objective clinical findings to support his opinion. Indeed, Plaintiff's podiatrist's office notes indicate that with the exception of her immediate pre and post-operative care and resolution of a post-operative infection, he provided no substantive care other than a brace. Further, Plaintiff's podiatrist reported, at most, that Plaintiff had some swelling and pain in her heel.

   Judge Padilla rejected Dr. Derksen's opinion that Plaintiff is disabled by her alleged foot impairment on essentially the bases that he rejected Plaintiff's podiatrist's opinion. (Tr. 22). Specifically, Judge Padilla determined that Dr. Derksen was not a meaningful treating source for Plaintiff's foot condition and that his opinion was not supported by his clinical findings. Indeed, as noted by Judge Padilla, Dr. Derksen's clinical notes reveal that he did not specifically treat Plaintiff for her alleged foot impairment and, in fact, Dr. Derksen noted that Plaintiff was being treated by her podiatrist for that impairment. Additionally, while Dr. Derksen noted Plaintiff's subjective complaints related to her foot, he documented few, if any, objective clinical findings.

   In contrast to Plaintiff's podiatrist's and Dr. Derksen's opinions, Dr. Danopulos, while finding that Plaintiff was indeed limited in her abilities to perform lifting activities, did not conclude that Plaintiff was so restricted as did Plaintiff's podiatrist and Dr. Derksen. Finally,

10

Plaintiff's podiatrist's and Dr. Derksen's opinions are inconsistent with the reviewing podiatrist's opinion. (Tr. 199-206).

Under these facts, the Commissioner had an adequate basis for rejecting Plaintiff's podiatrist's opinion and Dr. Derksen's opinion.

Plaintiff argues next that the Commissioner erred by rejecting her allegations of disabling pain.

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

Although he determined that Plaintiff has the severe impairment of residuals of

Achilles tendon repair on the left and depression/dysthymia, Judge Padilla determined that Plaintiff's complaints of disabling pain and limitations were not entirely credible essentially because they are not supported by the record. (Tr. 22-23, 26). This Court agrees.

As noted above, Plaintiff's podiatrist's and Dr. Derksen's clinical notes contain few objective findings. In addition, as Judge Padilla essentially noted, neither her podiatrist or Dr. Derksen provided substantive treatment for Plaintiff's alleged impairment. For example, there is no evidence of any physical therapy, injections, or prescribed medication other than Lasix. While Plaintiff testified that she takes Naprosyn, a non-narcotic medication, for pain, the record indicates that Plaintiff took these two medications for a long-term, sustained period. (Tr. 22).

The Regulations provide that in assessing credibility, the Commissioner may consider a variety of factors including daily activities. 20 C.F.R. § 404.1529. In the present case, in September, 2005, Plaintiff stated that she was responsible for nearly all care for her mother and aunt. (Tr. 279). In April, 2006, Plaintiff indicated that she had enjoyed spending a whole day doing yard work with her sister. (Tr. 360). In November, 2006, Plaintiff reported that she was keeping up with activities of daily living. (Tr. 352). In addition, Plaintiff's self-reported activities include driving, helping with cooking, doing laundry, performing household chores, and visiting others. Those activities are inconsistent with an allegation of total disability.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v.*

*Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

January 29, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).